UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

WAYMAN PATTERSON #390905,

        Plaintiff,                        Case No. 2:08-cv-78

v.                                        Honorable R. Allan Edgar

PAUL GODWARD, et al.,

        Defendants.
_____/

## **OPINION**

        Plaintiff Wayman Patterson, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Paul Godward, Resident Unit Officer Stan Fredrickson, Resident Unit Officer Robert Majurin, Sr., Corrections Officer Robert Majurin, Jr., Resident Unit Officer James R. Loveless, Deputy Warden Linda Tribley, and Warden Greg McQuiggin. Plaintiff alleges in his complaint that he is African American, arrived at AMF on August 1, 2006, and was housed in transitional housing. Plaintiff was transferred to the general population on September 11, 2006.

        Plaintiff's complaint alleges that on September 15, 2006, Defendant Majurin deprived Plaintiff of his dinner and law library because Plaintiff was wearing a "wave cap." When Plaintiff attempted to resolve the issue, Defendant Majurin rebuffed his attempt and threatened Plaintiff with false misconduct reports. Plaintiff then filed a grievance, after which Defendant Majurin issued a false misconduct on Plaintiff. On September 18, 2006, Plaintiff was transferred to Unit 6. On September 20, 2006, Plaintiff was discussing the false misconduct with other prisoners and stated that he planned

to file a court action regarding the false misconduct. Defendant Loveless overheard Plaintiff's comment and told him that he would write Plaintiff up if he kept talking about filing a court action. Defendant Loveless then wrote a false misconduct on Plaintiff.

On September 22, 2006, Plaintiff attempted to discuss the situation with Defendant Loveless, who again warned Plaintiff that if he filed a court action, he would receive a misconduct ticket. Defendant Loveless subsequently wrote a ticket on Plaintiff. Plaintiff filed a grievance regarding this issue, but did not receive a response. On September 24, 2006, Plaintiff got a job as a law clerk in the prison library. On October 3, 2006, Plaintiff was issued a major misconduct report by Defendant Godward for assault. Plaintiff was escorted to segregation one hour later. On October 5, 2006, Defendant Fredrickson deprived Plaintiff of a shower and then refused to pick up Plaintiff's food tray so that he could implement a "food loaf" restriction against Plaintiff. Defendant Fredrickson wrote a major misconduct on Plaintiff for disobeying an order to turn in his food tray, stating that Plaintiff was going to pay for filing complaints against his colleagues. Consequently, Plaintiff was placed on food loaf by Defendant Tribley on October 6, 2006. Defendant Fredrickson then threatened Plaintiff with chemical agents if he kept filing grievances on prison officials. Plaintiff sent a grievance directly to step III on October 6, 2006, but it was returned to Plaintiff for submission at step I. Plaintiff filed the grievance and appealed the denials at each step.

The court initially dismissed Plaintiff's complaint on June 30, 2008, as failing to state a claim. Plaintiff filed an appeal, and the Sixth Circuit reversed the dismissal and remanded the case to this court. Plaintiff filed an amended complaint on September 23, 2010, adding Defendants Resident Unit Officer Rick Wertanen, Corrections Officer Pete Isaacson, and Assistant Resident Unit Supervisor Brandon Sweeney (docket #66). In his amended complaint, Plaintiff alleges that Defendant Wertanen issued false misconduct tickets on him on August 21, 2008, and December 6, 2008. Plaintiff asserts

2

that Defendant Wertanen was motivated by a desire to retaliate against him for filing a lawsuit against Defendant Fredrickson. Plaintiff also alleges that Defendant Sweeney rejected his telephone list after he attempted to add an attorney because Plaintiff had failed to include the attorney's Michigan Member Number. Plaintiff states that this violated his right of access to the courts.

Presently before the Court are the Motions for Summary Judgment filed by Defendants McQuiggin, Tribley, Godward, Fredrickson, Loveless, Sweeney and Wertanen pursuant to Fed. R. Civ. P. 56.[1] Plaintiff has responded and the matter is ready for decision. Because both sides have asked that the Court consider evidentiary materials beyond the pleadings, the standards applicable to summary judgment apply. *See* Fed. R. Civ. P. 12(b).

Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is

---

[1] Robert Majurin, Sr., Robert Majurin, Jr., and Pete Isaacson have not been served and are not party to the motions for summary judgment being addressed in this opinion.

sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants McQuiggin and Tribley assert that they are entitled to summary judgment because they were not personally involved in the alleged misconduct. Liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum,

that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

In Plaintiff's complaint, he asserts that Defendants McQuiggin and Tribley took no action to remedy the misconduct of their subordinates, despite being notified of the misconduct. In Plaintiff's affidavit, he asserts that Defendant Tribley was responsible for the conduct of her subordinates, such as false misconduct tickets. Plaintiff states that he wrote her a letter informing her of the misconduct of her employees, but she refused to take any corrective action. (Plaintiff's Exhibit D.) Plaintiff makes similar assertions regarding Defendant McQuiggin. (Plaintiff's Exhibit E.) Defendants McQuiggin and Tribley cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Plaintiff fails to make any specific factual allegations showing that Defendants McQuiggin or Tribley directly participated in the offensive conduct in any way. Accordingly, the Court concludes that Defendants McQuiggin and Tribley are entitled to summary judgment for lack of personal involvement.

Defendants Loveless, Godward, Fredrickson, and Wertanen assert that they are entitled to summary judgment on Plaintiff's claims that they retaliated against him by filing false misconduct tickets. Defendants contend that the misconduct tickets were issued as the result of Plaintiff's violation of prison rules, and were not motivated by a desire to retaliate against Plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In support of the motion for summary judgment, Defendant Loveless attests that on September 20, 2006, he issued the misconduct on Plaintiff for excessive noise because Plaintiff was standing at his cell door and yelling. This misconduct was dismissed because the hearing did not take place within 7 days. On September 22, 2006, Defendant Loveless issued a second misconduct on Plaintiff for excessive noise because Plaintiff was standing at his cell door and yelling. Plaintiff was subsequently found guilty of the misconduct and was sentenced to 15 days loss of privileges. Defendant Loveless also attests that inmate complaints and grievances are a daily occurrence and that he has no recollection of any complaints or grievances that Plaintiff either filed or threatened to file. (Defendants' Exhibit A, ¶¶ 6-10.)

Defendants state that the most severe sanction that can be imposed for a minor misconduct conviction is a loss of privileges. Defendants rely on *Ingram v. Jewell,* 94 Fed. Appx. 271, 273 (6th Cir. 2004) in which the Sixth Circuit found that 14 days of lost privileges does not constitute an "adverse action" that would deter a person of ordinary firmness from engaging in the protected activity of filing grievances. *Id.* at 273 (*citing Thaddeus-X*, 175 F.3d at 396-97). *See also Tate v. Williams*, 2007 WL 2302613, *4 (a 15-day commissary restriction, by itself, is a *de minimis* punishment that falls short of constituting an "adverse action).

In addition, Defendants state that because Plaintiff was actually engaged in making excessive noise, the misconduct tickets were not retaliatory. Where plaintiff is ultimately found guilty of misconduct charges, plaintiff cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). As noted above, Plaintiff was found guilty of the September 22, 2006, misconduct and the September 20, 2006, misconduct was only dismissed because of a technicality, not because Plaintiff was found not guilty of the misconduct. Therefore, for the reasons set forth above, Defendant Loveless is entitled to summary judgment on Plaintiff's retaliation claim.

In support of his claim for summary judgment, Defendant Godward attests that he wrote a major misconduct ticket on Plaintiff for assault and battery because Plaintiff struck him in the shoulder as they passed on the walkway. Because this was a non-bondable offense, Plaintiff was moved to segregation following issuance of the ticket. (Defendants' Exhibit D, ¶¶ 5-6.) Plaintiff was found guilty of the misconduct following a hearing, and his subsequent request for rehearing was denied. (Defendants' Exhibit D, ¶ 7.) Defendant Godward was not aware of any grievance or complaint filed by Plaintiff at the time of the misconduct. (Defendants' Exhibit D, ¶ 9.)

With regard to Plaintiff's claim against Defendant Godward, Plaintiff fails to allege any specific facts showing that the misconduct ticket was motivated by any protected conduct on the part of Plaintiff. Moreover, as noted above, because Plaintiff was ultimately found guilty of misconduct charges, he cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). Therefore, Defendant Godward is entitled to summary judgment on this claim.

Plaintiff alleges that on October 5, 2006, Defendant Fredrickson deprived Plaintiff of a shower and then refused to pick up Plaintiff's food tray so that he could implement a "food loaf" restriction against Plaintiff. Defendant Fredrickson then wrote a major misconduct on Plaintiff for disobeying an order to turn in his food tray, stating that Plaintiff was going to pay for filing complaints against his colleagues. Consequently, Plaintiff was placed on food loaf by Defendant Tribley on October 6, 2006. Defendant Fredrickson then threatened Plaintiff with chemical agents if he kept filing grievances on prison officials.

In support of his request for summary judgment, Defendant Fredrickson attests that on October 5, 2006, he ordered Plaintiff to bring him his food tray, but Plaintiff refused, calling Defendant Fredrickson a "bitch" and telling him that he would get the food tray when he returned Plaintiff's property. Defendant Fredrickson repeated the order and Plaintiff jumped off his bunk and rushed to the door yelling for Defendant Fredrickson to get his property or he was going to shove the food tray up Defendant Fredrickson's "ass." (Defendants' Exhibit E, ¶¶ 5-7.) At this time, Plaintiff was in segregation and could receive up to three showers per week in accordance with MDOC Policy Directive 04.05.120. Because Plaintiff had threatened staff, his out of cell activity was curtailed and he was not provided with a shower on October 5, 2006. (Defendants' Exhibit E, ¶¶ 8-9.) The court concludes that

8

the denial of a shower on one occasion is de minimis does not constitute adverse conduct for purposes of a retaliation claim.

Defendant Fredrickson attests that he issued a major misconduct ticket on Plaintiff for refusing to return his meal tray and threatening behavior. Plaintiff was found guilty of both misconduct charges following a hearing and his request for rehearing was denied. (Defendants' Exhibit E, ¶¶ 7 and 14.) As noted above, because Plaintiff was ultimately found guilty of misconduct charges, he cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). Therefore, Defendant Fredrickson is entitled to summary judgment on Plaintiff's claim that the misconduct tickets and imposition of food loaf were retaliatory.

Plaintiff claims that Defendant Fredrickson threatened to spray him with chemical agents because he had been filing complaints against Defendant Fredrickson's colleagues. Defendant Fredrickson denies making such a threat and attests that as a member of the line staff, he did not have access to chemical agents. (Defendants' Exhibit E, ¶¶ 13-16.) The court notes that while even the threat of an adverse action can satisfy this element if the threat is capable of deterring a person of ordinary firmness from engaging in the protected conduct, *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010), the threat of the use of chemical agents by someone who does not have access to such agents does not constitute such adverse conduct. Therefore, Defendant Fredrickson is entitled to summary judgment on Plaintiff's claim regarding threats to spray Plaintiff with chemical agents.

Defendant Wertanen asserts that he is entitled to summary judgment on Plaintiff's retaliation claim because the misconduct tickets he issued were in response to Plaintiff's violation of prison rules, and were not motivated by a desire to retaliate. In his affidavit, Defendant Wertanen attests that on August 21, 2008, he observed that Plaintiff had a towel covering his cell window.

Defendant Wertanen knocked on the cell door and instructed Plaintiff to remove the towel. Plaintiff came to the door, moved the towel to the side and stated, "Open this door Wertanen, I would love nothing more than to beat your fucking head in on this rock in front of all these mother fuckers, you ain't shit." Defendant Wertanen then issued a major misconduct on Plaintiff for threatening behavior. Plaintiff was found guilty of the misconduct charge after an administrative hearing. (Defendants' Exhibit A, ¶¶ 5-7.) In response to this contention, Plaintiff states that when Defendant wrote the August 21, 2008 ticket, he told Plaintiff that he would continue to write tickets on him if he did not drop the lawsuit against his colleagues. Plaintiff concedes that he had a towel in his cell window, but states that it was only there so that he could take a "bird bath" without receiving a sexual misconduct ticket. Plaintiff claims that his request for the unit door card and the log book as evidence during his hearing was denied, and that such evidence could have shown that Defendant Wertanen was not making rounds when he harassed him.

Defendant Wertanen further attests that on December 6, 2008, while escorting Plaintiff from the yard, he instructed Plaintiff to drop his rubber boots in the corridor. Plaintiff refused to comply, stating "fuck you bitch." Defendant Wertanen repeated the order, and Plaintiff stopped, threw his boots down, and stated that if he was not wearing handcuffs, he would "beat the fucking shit out of" Defendant Wertanen. Defendant Wertanen wrote a major misconduct on Plaintiff for threatening behavior, and Plaintiff was found guilty of the misconduct following an administrative hearing. (Defendants' Exhibit A, ¶¶ 21-23.) Plaintiff claims that he received correspondence from the Sixth Circuit on December 8, 2008, which was dated December 3, 2008. Plaintiff asserts that the misconduct ticket was in retaliation for this correspondence. In addition, Plaintiff asserts that Defendant Wertanen is very close friends with Defendant Fredrickson, and that he was aware of Plaintiff's legal claims against Defendant Fredrickson.

The court notes that temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

In this case, Plaintiff claims that when Defendant Wertanen wrote the August 21, 2008, misconduct ticket on Plaintiff, he told him that he could expect more of the same if he did not drop his lawsuit, and then wrote a misconduct ticket on him around the same time that Plaintiff received mail from the Sixth Circuit. However, Plaintiff fails to allege facts showing that Defendant Wertanen was aware of this letter. Moreover, as noted above, because Plaintiff was ultimately found guilty of misconduct charges, Plaintiff cannot state a claim for retaliation arising from the misconduct charges. *Wilson v. Phipps*, No. 97-1661, 1998 WL 384560, at *1 (6th Cir. June 18, 1998) (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990) (per curiam)). Therefore, Defendant Wertanen is entitled to summary judgment on Plaintiff's retaliation claims regarding the misconduct convictions.

Plaintiff also claims that Defendants violated his Eighth Amendment rights when they imposed a food loaf restriction and denied him a shower on one occasion. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).

With regard to food, prisoners must receive adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. *See Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977). The Sixth Circuit has repeatedly held that a diet of food loaf does not violate the Eighth Amendment because nutritional and caloric requirements are met. *See, e.g.*, *Payton-Bey v.*

*Vidor*, No. 94-2472, 1995 WL 603241, at *1 (6th Cir. Oct. 12, 1995); *Hinton v. Doney*, No. 93-2050, 1994 WL 20225, at *2 (6th Cir. Jan. 26, 1994); *Boswell v. Meyers*, No. 89-2144, 1990 WL 109230, at *1 (6th Cir. Aug. 2, 1990). Nor does the denial of a shower on a single occasion rise to the level of an Eighth Amendment deprivation.

Defendant Sweeney asserts that he is entitled to summary judgment on Plaintiff's access to courts claim regarding the rejection of Plaintiff's telephone list. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL

13

677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993).

Defendant Sweeney asserts that he is entitled to summary judgment on this claim because Plaintiff fails to allege facts showing that he has suffered an actual injury to pending litigation. Defendant Sweeney relies on MDOC Policy Directive 05.03.130, which requires staff to verify an attorney's business telephone using the State Bar of Michigan directory and/or website. If a telephone number cannot be verified in this manner, the policy requires that the attorney submit written verification of the business telephone number directly to the Warden's office. As noted by Defendant Sweeney, "[i]t is the prisoner's responsibility to notify the attorney or legal service organization of these requirements." (*See* MDOC Policy Directive 05.03.103 ¶¶Y and Z, Defendants' Exhibit C.)

Defendant Sweeney attests that because Plaintiff's prior counsel, Alistair E. Newbern, is not licensed to practice in Michigan, her business number was not listed in the directory published by the State Bar of Michigan. Consequently, Attorney Newbern should have submitted a written verification of her business telephone number, and Plaintiff was responsible for notifying her of this requirement. Moreover, Defendant Sweeney asserts that Plaintiff fails to allege that he suffered any actual injury as a result of Defendant Sweeney's conduct.

Plaintiff responds to Defendant Sweeney's request for summary judgment by stating that he never intended to state a claim for denial of access to the courts. Rather, Plaintiff states that he is asserting that Defendant Sweeney's conduct was retaliatory. Plaintiff states that Defendant Sweeney knew that Ms. Newbern was an attorney because he previously spoke to her on the telephone. Moreover, Plaintiff asserts that in December of 2008, Ms. Newbern provided Janice Ansell, the local

14

litigation coordinator, with her bar number and phone number, verifying that she was an active member of the Tennessee State Bar.

Plaintiff states that when he was exercising his constitutional right to communicate with his attorney, Defendant Sweeney read Plaintiff's outgoing mail which was addressed to Ms. Newbern. Consequently, Defendant Sweeney learned of Plaintiff's potential litigation against state employees, and retaliated against Plaintiff by rejecting his telephone list. In support of his assertion, Plaintiff offers copies of letters from Attorney Newbern to Janice Ansell, in which she offered proof of bar membership in Tennessee and of her appointment as Plaintiff's appellate attorney, and sought to speak with Plaintiff regarding his appeal. (Plaintiff's Exhibit C, Attachments 2-5.) Plaintiff also offers copies of his grievance regarding this issue, the grievance appeals, and the responses to steps I, II and III. (Plaintiff's Exhibit C, Attachments 6-8.) In the step II response, the Warden noted that Defendant Sweeney had been contacted and had indicated that the attorney's phone number would be added to the phone list once the required information was received. The step III response indicates that the situation was investigated and that there was no evidence of negligence on the part of Defendant Sweeney.

The court notes that it is clear from the record that Attorney Newbern communicated with Janice Ansell, if not with Defendant Sweeney, and provided her bar number, telephone number, and other pertinent information. The court notes that Defendant Sweeney was named as a defendant in the case where Attorney Newbern was representing Plaintiff. Therefore, it appears as if there is a genuine issue of material fact regarding whether Defendant Sweeney acted with a desire to retaliate against Plaintiff for filing the lawsuit against him. Consequently, the court concludes that Defendant Sweeney is not entitled to summary judgment on Plaintiff's retaliation claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated by the conduct of Defendants McQuiggin, Tribley, Godward, Fredrickson, Loveless, and Wertanen, they are entitled to qualified immunity. However, because it is well established that retaliating against a prisoner for filing a lawsuit violates the prisoner's constitutional rights, Defendant Sweeney is not entitled to qualified immunity.

In light of the foregoing, the court concludes that Defendants McQuiggin, Tribley, Godward, Fredrickson, Loveless, and Wertanen are entitled to summary judgment, but that Defendant Sweeney is not entitled to summary judgment on Plaintiff's retaliation claim. Accordingly, the motions for summary judgment filed by Defendants McQuiggin, Tribley, Godward, Fredrickson, and Loveless

(docket #49, #69) are granted, and the motion for summary judgment filed by Defendants Wertanen and Sweeney (docket #92) is granted with regard to Defendant Wertanen, and denied with regard to Defendant Sweeney.

With regard to Plaintiff's pending motion for a temporary restraining order (docket #89), Plaintiff claims that staff at AMF are subjecting him to false misconduct tickets in retaliation for filing lawsuits and seeks an immediate transfer to another prison. The Sixth Circuit has explained that a court confronted with a request for injunctive relief must consider and balance four factors:

1. Whether the movant has shown a strong or substantial likelihood or probability of success on the merits.

2. Whether the movant has shown irreparable injury.

3. Whether the preliminary injunction could harm third parties.

4. Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977). *See also*, *Frisch's Restaurant Inc. v. Shoney's*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ardister v. Mansour*, 627 F.Supp. 641 (W.D. Mich. 1986).

Moreover, where a prison inmate seeks an order enjoining state prison officials, this court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Kendrick v. Bland*, 740 F.2d 432 at 438, n.3, (6th Cir. 1984). *See also Harris v. Wilters*, 596 F.2d 678 (5th Cir. 1979). It has also been remarked that a party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Checker Motors Corp. v. Chrysler Corp.*, 405 F.2d 319 (2nd Cir. 1969), *cert. denied*, 394 U.S. 999 (1969). *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1986).

A review of the materials of record fails to establish that Plaintiff will suffer irreparable harm absent injunctive relief. The only remaining Defendant in this case is Defendant Sweeney. Should Plaintiff receive a misconduct ticket from this Defendant, he is entitled to a hearing on the misconduct, during which he can present his version of the events. Because Plaintiff has failed to meet the heavy burden establishing the need for injunctive relief, the court will deny Plaintiff's motion for a temporary restraining order (docket #89).

In addition, Plaintiff has a pending motion for an order requiring AMF to provide photocopies of exhibits which Plaintiff seeks to attach to his response to the motions for summary judgment. In this motion, Plaintiff claims that he was not given photocopies of his affidavit with regard to Defendant Loveless, his affidavit with regard to Defendant Godward, and his affidavit with regard to Defendant Fredrickson. However, a review of the record reveals that Plaintiff has submitted these documents to the court as Exhibits A, B and C. Therefore, his request for these photocopies is moot. Plaintiff also asserts that he was denied photocopies of an unpublished case entitled *Kevin King v. Chuck Zamiara*, Attorney General correspondence in the Sixth Circuit, Appellant's correspondence in the Sixth Circuit, and Plaintiff's security classification screen. However, Plaintiff fails to explain why he required these documents, nor is the relevance of these documents readily apparent. Therefore, the motion (docket #67) will be denied.

Robert Majurin, Sr., Robert Majurin, Jr., and Pete Isaacson have not been served and are not party to the motions for summary judgment being addressed in this opinion

An Order consistent with this Opinion will be entered.

Dated:   3/2/2011                             */s/ R. Allan Edgar*
                                              R. ALLAN EDGAR
                                              UNITED STATES DISTRICT JUDGE