UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

WAYMAN PATTERSON #390905,

        Plaintiff,                         Case No. 2:08-cv-78

v.                                          Honorable R. Allan Edgar

PAUL GODWARD, et al.,

        Defendants.

_____/

## **OPINION**

Plaintiff Wayman Patterson, an inmate currently confined at the Baraga Maximum Correctional Facility (AMF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer Paul Godward, Resident Unit Officer Stan Fredrickson, Resident Unit Officer Robert Majurin, Sr., Corrections Officer Robert Majurin, Jr., Resident Unit Officer James R. Loveless, Deputy Warden Linda Tribley, and Warden Greg McQuiggin.  Plaintiff alleges in his complaint that he is African American, arrived at AMF on August 1, 2006, and was housed in transitional housing.  Plaintiff was transferred to the general population on September 11, 2006.

Plaintiff's complaint alleges that on September 15, 2006, Defendant Majurin, Sr. deprived Plaintiff of his dinner and law library because Plaintiff was wearing a "wave cap."  When Plaintiff attempted to resolve the issue, Defendant Majurin, Sr. rebuffed his attempt and threatened Plaintiff with false misconduct reports.  Plaintiff then filed a grievance, after which Defendant Majurin, Sr. issued a false misconduct on Plaintiff.  On September 18, 2006, Plaintiff was transferred to Unit 6.  On September 20, 2006, Plaintiff was discussing the false misconduct with other prisoners

and stated that he planned to file a court action regarding the false misconduct. Defendant Loveless overheard Plaintiff's comment and told him that he would write Plaintiff up if he kept talking about filing a court action. Defendant Loveless then wrote a false misconduct on Plaintiff.

On September 22, 2006, Plaintiff attempted to discuss the situation with Defendant Loveless, who again warned Plaintiff that if he filed a court action, he would receive a misconduct ticket. Defendant Loveless subsequently wrote a ticket on Plaintiff. Plaintiff filed a grievance regarding this issue, but did not receive a response. On September 24, 2006, Plaintiff got a job as a law clerk in the prison library. On October 3, 2006, Plaintiff was issued a major misconduct report by Defendant Godward for assault. Plaintiff was escorted to segregation one hour later. On October 5, 2006, Defendant Fredrickson deprived Plaintiff of a shower and then refused to pick up Plaintiff's food tray so that he could implement a "food loaf" restriction against Plaintiff. Defendant Fredrickson wrote a major misconduct on Plaintiff for disobeying an order to turn in his food tray, stating that Plaintiff was going to pay for filing complaints against his colleagues. Consequently, Plaintiff was placed on food loaf by Defendant Tribley on October 6, 2006. Defendant Fredrickson then threatened Plaintiff with chemical agents if he kept filing grievances on prison officials. Plaintiff sent a grievance directly to step III on October 6, 2006, but it was returned to Plaintiff for submission at step I. Plaintiff filed the grievance and appealed the denials at each step.

The court initially dismissed Plaintiff's complaint on June 30, 2008, as failing to state a claim. Plaintiff filed an appeal, and the Sixth Circuit reversed the dismissal and remanded the case to this court. Plaintiff filed an amended complaint on September 23, 2010, adding Defendants Resident Unit Officer Rick Wertanen, Corrections Officer Pete Isaacson, Corrections Officer Robert Majurin, Jr., and Assistant Resident Unit Supervisor Brandon Sweeney (docket #66). In his amended complaint, Plaintiff alleges that Defendant Wertanen issued false misconduct tickets on him on

August 21, 2008, and December 6, 2008. Plaintiff asserts that Defendant Wertanen was motivated by a desire to retaliate against him for filing a lawsuit against Defendant Fredrickson. Plaintiff also alleges that Defendant Sweeney rejected his telephone list after he attempted to add an attorney because Plaintiff had failed to include the attorney's Michigan Member Number. Plaintiff states that this violated his right of access to the courts.

On March 2, 2011, the court granted summary judgment as to Defendants McQuiggin, Tribley, Godward, Fredrickson, Loveless, and Wertanen, but denied summary judgment as to Defendant Sweeney. (Docket ##111-112.) The court noted that Defendants Majurin Sr., Majurin Jr., and Isaacson had not yet been served and were not parties to the motions for summary judgment.

Presently before the Court are the Motions for Summary Judgment filed by Defendants Sweeney, Majurin Sr., Majurin Jr. and Isaacson pursuant to Fed. R. Civ. P. 56. Plaintiff has responded and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a

mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendant Isaacson asserts that Plaintiff's allegations regarding an allegedly retaliatory misconduct ticket dated September 21, 2006, are barred by the statute of limitations. Federal courts apply state personal injury statutes of limitations to claims brought under §1983. *Wilson v. Garcia*, 471 U.S. 261, 276, 105 S. Ct. 1938, 1947 (1985); *Collard v. Kentucky Bd. of Nursing*, 896 F.2d 179, 180-181 (6th Cir. 1990). For civil rights suits filed in Michigan under §1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(8); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir.) (per curiam), *cert. denied*, 479 U.S. 923, 107 S. Ct. 330 (1986); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, *1 (6th Cir. Feb. 2, 1999). Although state tolling provisions must be applied to § 1983 suits brought by prisoners, *Hardin*, 490 U.S. at 544; *Jones v. City of Hamtrack*, 905 F.2d 908, 909 (6th Cir. 1990), *cert. denied*, 498 U.S. 903 (1990), Michigan's tolling provision for imprisoned persons does not provide plaintiff any additional benefit in this case. *See* MICH. COMP. LAWS § 600.5851(9).

Defendant Isaacson states that Plaintiff's claims against him were first raised in the amended complaint, which was dated June 15, 2010, and was filed on September 23, 2010. According to Plaintiff's amended complaint, Defendant Isaacson issued him a retaliatory minor misconduct ticket on September 21, 2006, more than four years before the filing of his amended complaint. Therefore, Defendant Isaacson asserts that the claim is time barred. Under Rule 15(c) an

4

amended complaint, which names a new party, can relate back to the original complaint only if during the 120 day period after filing the original complaint the new defendant knew, or should have known, that but for a mistake concerning the identity of the proper party, the action would have been brought against them. In *Cox v. Treadway,* 75 F.3d 230, 240 (6th Cir.), *cert denied,* 117 S.Ct. 78 (1996), the Sixth Circuit held that new parties may not be added to an action after the statute of limitations runs. Because Defendant Isaacson was not named as a Defendant in Plaintiff's original complaint, and because the exception set forth in Rule 15(c) does not apply in this case, Plaintiff's claim against Defendant Isaacson regarding the September 21, 2006, misconduct ticket is time-barred.

Plaintiff alleges that Defendant Isaacson issued an August 3, 2008, minor misconduct ticket on him in retaliation for filing the instant lawsuit. In addition, Plaintiff alleges that Defendants Isaacson and Majurin, Jr. issued major misconduct tickets on him on August 9, 2008. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendants Isaacson and Majurin, Jr. assert that they are entitled to summary judgment on Plaintiff's claim regarding these tickets because court records show that issuance of summons upon the original Defendants did not occur until May 3, 2010, months after the misconduct tickets

5

had been issued (docket #22). Defendants Isaacson and Majurin, Jr. assert that Plaintiff fails to allege specific facts demonstrating that they were aware of the instant lawsuit at the time of the misconduct tickets. In response to this assertion, Plaintiff states that he received these misconduct tickets less than thirty days after he filed the July 16, 2008, Notice of Appeal (docket #13) and that the Sixth Circuit assigned a case number to Plaintiff's appeal. However, Plaintiff fails to allege specific facts showing that Defendants Isaacson and Majurin were aware of the appeal and that they were motivated to retaliate against Plaintiff because of his use of the legal system.[1] Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

---

[1] Plaintiff contends that the named Defendants would have received copies of the notice of appeal pursuant to Fed. R. App. P. 3(a)(1) and 3(d). However, the requirement that each party's counsel of record receive a copy of the notice appeal did not apply at that point in this case because none of the named defendants had been served.

In this case, Plaintiff makes a conclusory statement that Defendants were aware of his pending lawsuit, but fails to allege any facts showing that this was actually the case. Plaintiff's assertions of motive are entirely conclusory and unsupported. With regard to the minor misconduct ticket issued on August 3, 2008, Plaintiff concedes that he was found guilty of the misconduct following an administrative hearing. Defendant Isaacson attests that the prison does not maintain records of minor misconduct tickets and/or hearings for more than six months, so that any record of the hearing on this misconduct is unavailable. However, Defendant Isaacson asserts that pursuant to MDOC policy, the most severe sanction that Plaintiff could have received for a minor misconduct conviction was 15 days loss of privileges. (Defendants' Exhibit A, ¶5; Exhibit C, MDOC Policy Directive 03.03.105, Attachment D, Misconduct Sanctions.) As noted by Defendants, the Sixth Circuit has previously found that 14 days of lost privileges does not constitute an "adverse action" that would deter a person of ordinary firmness from engaging in the protected activity of filing grievances. *Ingram v. Jewell,* 94 Fed. Appx. 271, 273 (6th Cir. 2004) (*citing Thaddeus-X*, 175 F.3d at 396-97). Consequently, the court concludes that the minor misconduct ticket issued by Defendant Isaacson on August 3, 2008, did not constitute retaliation in violation of Plaintiff's First Amendment rights.

With regard to the August 9, 2008, major misconduct tickets written by Defendants Isaacson and Majurin, Jr., Defendants correctly note that a finding of guilt based upon some evidence of a violation of prison rules "essentially checkmates [a] retaliation claim." *Jackson v. Madery,* 158 Fed. Appx. 656, 662 (6th Cir. 2005) (*citing Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994)). Defendants offer a copy of the administrative hearing report on these tickets issued in support of their claim for summary judgment. In the "reasons for findings," the Hearing Officer stated:

> 012 (Isaacson) Prisoner says the staff members are lying, but the reporter details convincingly that when prisoner was shaken down after leaving the law library, prisoner turned toward the reporter with an agitated look and clenched right fist and said, "You're history, Isaacson, you mother fucker. Gone, gone, gone." Prisoner's words and action expressed an intent to injure or physically abuse another person. Prisoner says that the staff witness only said prisoner clenched his fist in his staff witness statement, not his Misconduct Report. However, the staff witness in his Misconduct Report was focused on the order given to prisoner. The staff witness also observed prisoner's clenched fist and heard prisoner say the reported words.
>
> 020 (Majurin) The reporter details convincingly that he told prisoner to turn around and put his hands behind his back to be cuffed. Prisoner heard the reporter, as evidenced by prisoner looking at the reporter with an angry look on his face and the reporter repeating his order. Prisoner voluntarily failed to comply with the order by walking out of the from [sic] door without being cuffed.
>
> Prisoner says he walked out of the door without incident, but that does not disprove that he refused to be cuffed, or that he did not say the reported words with a clenched fist, as reactions of staff to different events vary.

(Defendants' Exhibit A, Attachment 2.)

In response to this contention, Plaintiff denies engaging in any misconduct and refers to his attached affidavit. (Plaintiff's Exhibit A.) However, Plaintiff's unsupported affidavit is contradicted by the affidavits of Defendants Isaacson and Majurin, Jr., as well as by the misconduct record offered by each Defendant. (Defendants' Exhibits A and B.) An unsupported affidavit that is contradicted by other evidence does not create a genuine issue of material fact sufficient to survive a summary judgment motion. *Smit v. Meyer*, 2012 WL 499643, slip op. *2 (6th Cir. Feb. 16, 2012) (*citing Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993)). Therefore, the court concludes that Defendants Isaacson and Majurin, Jr. are entitled to summary judgment.

In Plaintiff's amended complaint, he alleges that Defendant Sweeney retaliated against him when he "frustrated Plaintiff's effective access to his attorney, Ms. Alistair E. Newbern by not

8

processing Ms. Newbern's phone number to Plaintiff's phone list. In his response to the motion for summary judgment, Plaintiff asserts that his claim is that Defendant Sweeney retaliated against Plaintiff by rejecting his telephone list. In Defendant Sweeney's affidavit, he attests that on July 20, 2009, Plaintiff submitted a request to add Attorney Alistair E. Newbern to his telephone list. Defendant Sweeney relies on MDOC Policy Directive 05.03.130, which requires staff to verify an attorney's business telephone using the State Bar of Michigan directory and/or website. If a telephone number cannot be verified in this manner, the policy requires that the attorney submit written verification of the business telephone number directly to the Warden's office. As noted by Defendant Sweeney, "[i]t is the prisoner's responsibility to notify the attorney or legal service organization of these requirements." (*See* MDOC Policy Directive 05.03.103 ¶¶Y and Z, Defendants' Exhibit C.)

Defendant Sweeney attests that because Plaintiff's prior counsel, Alistair E. Newbern, is not licensed to practice in Michigan, her business number was not listed in the directory published by the State Bar of Michigan. Plaintiff failed to include written verification of Attorney Newbern's business telephone number. Consequently, Plaintiff's request failed to comply with policy. When Defendant Sweeney informed Plaintiff of this fact, Plaintiff responded that it was not his job to supply or request that information. Therefore, Defendant Sweeney denied the request. (Defendants' Exhibit F, ¶¶ 6-10.)

Defendant Sweeney denies Plaintiff's assertion that he knew that Ms. Newbern was Plaintiff's attorney at the time he denied Plaintiff's telephone request because he had called Plaintiff out of his cell between December of 2008 and January of 2009 so that he could receive an incoming telephone call from Attorney Newbern. Defendant Sweeney attests that Attorney Newbern could not have called into the Housing Unit to speak with Plaintiff because incoming telephone calls directed to prisoners would be disruptive to the daily operation and security of the Housing Unit and are

9

prohibited. (Defendants' Exhibit F, ¶¶ 9-10.) The court notes that MDOC Policy Directive 04.05.120 ¶ V, 16 provides:

> Telephone privileges for verified serious family emergencies, as determined by the Warden or designee; for communicating with the Office of the Legislative Corrections Ombudsman upon request of that Office; and for communicating with an attorney regarding official business of the prisoner, including litigation, upon request of the attorney.

Defendant Sweeney attests that he does not recall giving Plaintiff telephone privileges during the pertinent time period. Defendant Sweeney states that AMF practice is that housing units receive notification from the Warden's Office regarding the specific time and date that a segregation prisoner is to be provided telephone access and are not involved in the process of scheduling a segregation prisoner's telephone call to an attorney. Defendant Sweeney states that the notification generally specifies the number to be called and that it is to an attorney, but does not refer to the attorney by name. (Defendants' Exhibit F, ¶¶ 13-14.) Defendant Sweeney further attests that when Plaintiff submitted his telephone list request on July 20, 2009, he was still housed in administrative segregation. Because the segregation policy limits a prisoner's telephone privileges to two distinct circumstance, his approved telephone list is irrelevant while in segregation and most segregation prisoners do not submit requests to change their phone lists. Defendant Sweeney states that his denial of Plaintiff's request to add Attorney Newbern to his did not prevent Ms. Newbern from requesting telephone communication with Plaintiff. (Defendants' Exhibit F, ¶¶ 15-16.) Finally, Defendant Sweeney attests that prison litigation is commonplace and that she has no recollection of any litigation filed by Plaintiff, other than the instant lawsuit, which she became aware of on October 7, 2010, approximately 15 months after she denied Plaintiff's request. (Defendants' Exhibit F, ¶ 19.)

Janice Ansell, who was employed as Administrative Assistant at AMF during the pertinent time period, attests that Attorney Newbern provided her with her Tennessee bar number and telephone number on December 12, 2008. Ms. Ansell attests that attorney phone calls for administrative segregation prisoners, such as Plaintiff, are prearranged through the Warden's office and the housing unit is provided with the time and date established for the phone call. These phone calls are to be placed by housing staff and are not initiated by the requesting attorney. Ms. Ansell states that if Attorney Newbern had called AMF to speak with Plaintiff, her call would not have been sent to the housing unit, as such calls are disruptive to the daily operation and security of the housing unit. (Defendants' Exhibit G, ¶¶ 2, 4, 9-10.)

Ms. Ansell also attests that whenever a prisoner seeks to add an attorney to his phone list, MDOC policy requires that written verification of the attorney's business telephone number be submitted directly to the Warden's Office whenever the attorney is not listed in the State Bar of Michigan website. (Defendants' Exhibit G, ¶ 5, Attachment #1, Policy Directive 05.03.103, ¶ Z.) Ms. Ansell states that although Attorney Newbern may have requested to be placed on Plaintiff's phone list when she submitted written verification, that is not the correct procedure. Ms. Ansell denies ever adding an attorney to a prisoner's telephone list pursuant to the attorney's request, stating that once written verification is received, it is forwarded to the prisoner so that the prisoner can submit a Telephone Agreement and Number List with the necessary verification. (Defendants' Exhibit G, ¶¶ 6-7.)

The step I grievance response to grievance number AMF 09-07-0372-23D, which was filed on July 21, 2009, regarding Defendant Sweeney's denial of Plaintiff's telephone list request, states:

11

> The grievant was interviewed to no resolve. [Assistant Resident Unit Supervisor] Sweeney was also interviewed regarding this grievance. [Assistant Resident Unit Supervisor] Sweeney stated that at the time the Grievant submitted his phone list for update that he informed the Grievant that he is unable to verify the Attorney's bar number as the Attorney is not in Michigan and the bar number is required for processing / approving the phone list. Sweeney stated the Grievant then became irate and stated it was not his job to supply or request such information that it was [Sweeney's] job. [Assistant Resident Unit Supervisor] Sweeney then noted accordingly on the Grievant's submitted phone list the reason for denial. In accordance with PD 05.03.130, paragraphs Y and Z, bar numbers are required prior to Attorney numbers being added and "it is the prisoners responsibility to notify the Attorney or legal service organization of these requirements." I find no violation of PD 05.03.130 or of [Assistant Resident Unit Supervisor] Sweeney impeding the Grievant's ability to add appropriate / verified numbers to his phone list. Grievance is denied at this level.

(Defendants' Exhibit G, Attachment #2.)

Plaintiff agrees that the procedure for segregation prisoners to telephone attorneys is as set forth above. Plaintiff offers a copy of phone records that show that he made a phone call to Attorney Newbern on December 12, 2008, at 2:10 p.m. This phone call was not confidential because Attorney Newbern had not yet been entered into the prison phone system. (Plaintiff's Exhibit C, Attachment #16.) Plaintiff asserts that Defendant Sweeney was the only staff member who could have placed this call because guards do not make attorney calls for prisoners.

As noted above, a prisoner seeking to succeed on a claim for retaliation must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*, 250 F.3d at 1037. Defendant

12

Sweeney asserts that Plaintiff cannot show an "adverse action" regarding the rejection of his telephone list because, while in segregation, Plaintiff no longer retained the right to make outgoing telephone calls. Instead, attorney calls had to be requested by his attorney. Plaintiff acknowledges that he received telephone calls from Attorney Newbern from December of 2008 through July of 2009. (Docket #66, Plaintiff's amended complaint, ¶ 116.) The court concludes that Defendant Sweeney is correct. Moreover, it is clear from the record that Defendant Sweeney complied with policy regarding the rejection of Plaintiff's telephone list, so that Defendant Sweeney's conduct does not appear to have been motivated by any protected conduct on the part of Plaintiff. Because there is no genuine issue of material fact that Defendant Sweeney violated Plaintiff's right to be free from retaliation, Defendant Sweeney is entitled to summary judgment.

Defendant Robert Majurin, Sr., asserts that he is entitled to summary judgment on Plaintiff's Eighth Amendment claim because failure to release Plaintiff from his cell for one meal does not constitute cruel and unusual punishment. However, in Plaintiff's response, he states that he is not asserting a violation of his rights under the Eighth Amendment. Rather, Plaintiff states that Defendant Majurin, Sr.'s conduct in depriving him of one meal and one day in the law library are adverse actions taken in retaliation for a grievance written by Plaintiff against Defendant Majurin, Sr. earlier that day. Specifically, Plaintiff claims that he received a major misconduct violation for disobeying a direct order on September 15, 2006, after Plaintiff had written a grievance on him.

Defendant Majurin, Sr. attests that on September 15, 2006, Plaintiff was wearing a homemade "doo-rag," which presents a security concern because contraband can be hidden in them. Defendant Majurin, Sr. gave Plaintiff a direct order to remove the doo-rag and, when Plaintiff refused, Defendant Majurin, Sr. escorted Plaintiff back to his cell. In addition, because Plaintiff refused to remove his doo-rag, his pass to attend law library was not signed. Defendant Majurin, Sr. wrote a

13

major misconduct for disobeying a direct order on Plaintiff based on his refusal to remove the doo-rag. (Defendant Majurin, Sr.'s Exhibit A, ¶¶ 7-8.) Plaintiff was found guilty of the misconduct ticket after a hearing.

As noted above, a finding of guilt based upon some evidence of a violation of prison rules "essentially checkmates [a] retaliation claim." *Jackson,* 158 Fed. Appx. 656, at 662 (*citing Henderson,* 29 F.3d at 469). Defendant Majurin, Sr. offers a copy of the administrative hearing report on this ticket in support of his claim for summary judgment. In the "reasons for findings," the Hearing Officer stated:

> The reporter details convincingly that he told prisoner to remove his do rag before he went to the law library. Prisoner heard the reporter, as evidenced by becoming loud and belligerent. Prisoner voluntarily failed to comply with the order by not removing his do rag. Prisoner says he removed the do rag when he was in his cell. I do not find timely compliance as it is easily understood that prisoner was to remove the do rag when the officer told him to, not when he returned to his cell. Because prisoner did not remove the do rag, the officer returned him to his cell.
>
> Prisoner says the Misconduct Report was written because of a grievance he filed. However, grievances are commonplace and prisoner does not convince me that the officer was so affected by the filing of the grievance that he fabricated this report.

(Defendant Majurin, Sr.'s Exhibit A, Attachment #2.)

In response to this contention, Plaintiff reasserts the allegations in his amended complaint. However, Plaintiff's unsupported affidavit is contradicted by the affidavit of Defendant Majurin, Sr., as well as by the misconduct record. (Defendant Majurin, Sr.'s Exhibit A, Attachment #2.) As previously stated by the court, an unsupported affidavit that is contradicted by other evidence does not create a genuine issue of material fact sufficient to survive a summary judgment motion.

14

*Smit*, 2012 WL 499643, slip op. *2 (*citing Leahy*, 996 F.2d at 139). Therefore, the court concludes that Defendant Majurin, Sr. is entitled to summary judgment on Plaintiff's retaliation claim.[2]

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because Plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

---

[2]Defendant Majurin, Sr. also states that he is entitled to summary judgment on Plaintiff's access to courts claim. However, Plaintiff is not asserting such a claim. Therefore, the court need not address this argument.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motions for summary judgment. Accordingly, Defendants' Motions for Summary Judgment (docket #127 and #139) will be granted and this case will be dismissed in its entirety. In addition, Plaintiff's motion for judgment (docket #156) will be denied as moot.

An Order and Judgment consistent with this Opinion will be entered.


Dated: 2/28/2012         /s/ R. Allan Edgar
                         R. Allan Edgar
                         United States District Judge